## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Gary Roberts, HRH P. Michael Popa, R.
Kevin Rodriguez, Jonathan Rosenoer, Mike
Carrubba, Bill Ellmore, Michael Butera,
Alanna Robinson-Bailey, Kevin Monagle,
Philip Philippides, Darin Cross, Darrell Goff,
Demone Abrams, Ken Claflin, Alex Campos,
Linda Reda, Dwayne Picou, Igancio Angles,
Nikhil Patel, Deborah Young, Jim Fyffe,
Vidya Sagar, Heidi Pehrson, Venkat
Govindarajan, Jeffrey Werner, Robert
Broughton, Piyush Gupta, Michael Matry,
Christopher Britton, Peter Toro, Cathy Carney,
Patrick O'Boyle III, Sonja Cardoso, Kam
Rezvani, Ron Howell, Jason Proctor, Joshua
Fox, Brad Gold, Jonathan Urban, Carlos
Castillo, Hershel Bagley, David Roknian,

                    Plaintiffs,

         v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

                    Defendant.

Docket No.:

## COMPLAINT

Plaintiffs Gary Roberts, HRH P. Michael Popa, R. Kevin Rodriguez, Jonathan Rosenoer,

Mike Carrubba, Bill Ellmore, Michael Butera, Alanna Robinson-Bailey, Kevin Monagle, Philip

Philippides, Darin Cross, Darrell Goff, Demone Abrams, Ken Claflin, Alex Campos, Linda

Reda, Dwayne Picou, Igancio Angles, Nikhil Patel, Deborah Young, Jim Fyffe, Vidya Sagar,

Heidi Pehrson, Venkat Govindarajan, Jeffrey Werner, Robert Broughton, Piyush Gupta, Michael

Matry, Christopher Britton, Peter Toro, Cathy Carney, Patrick O'Boyle III, Sonja Cardoso, Kam

Rezvani, Ron Howell, Jason Proctor, Joshua Fox, Brad Gold, Jonathan Urban, Carlos Castillo, Hershel Bagley, David Roknian bring this action against International Business Machines Corporation (IBM) under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and allege as follows:

## I.    SUMMARY OF ACTION

1.    The U.S. Equal Employment Opportunity Commission (EEOC) conducted a lengthy and in-depth investigation of the complaints of many older IBM employees who were terminated around the same time as Plaintiffs.  Based on its analysis of statistical data and "corroborating testimony from dozens of witnesses nationwide," the EEOC found "reasonable cause to believe that [IBM] has discriminated against" these older IBM workers because of their age. Exhibit A.

2.    The EEOC further found that termination of employees like Plaintiffs through group layoffs between 2013 and 2018 was part of a systemic and long-term plan devised by top management to replace older workers with younger career hires. The EEOC's investigation concluded that IBM's mass layoffs had an "adverse impact" on employees ages 40 and over, and it "uncovered top-down messaging from [IBM]'s highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." *Id.*

3.    The EEOC's investigation produced dozens of witnesses who confirmed IBM's discriminatory scheme. *Id*. This federal agency concluded that IBM's explanation for its disproportionate layoff decisions "[did] not withstand scrutiny." *Id*.

4.    Plaintiffs challenge IBM's systematic replacement of its older employees with much younger workers. In an effort to rebrand its image and shift its recruiting focus to

"Millennials," or people born between 1980 and 1996, IBM carried out a company-wide scheme of discharging its older workers through group terminations, known at IBM as "Resource Actions," in violation of the ADEA.

5.      IBM devised and implemented company-wide policies and practices to effectuate its discriminatory scheme to replace older workers with younger workers, including: (a) directing its managers to lower performance evaluation scores for older workers in order to provide a purported basis on which to select those workers for termination via Resource Actions; (b) exempting or protecting from layoff "early professionals" and recent college graduates, who are much younger than the average IBM employee; and (c) taking affirmative steps to keep its workforce and the public in the dark about its discriminatory practices, including falsely classifying Resource Action terminations as retirements or performance-based terminations.

6.      To further cover up its unlawful massive layoffs of older workers and insulate its actions from legal challenge, IBM ended its longstanding practice, dating back to at least 2001, of providing employees ages 40 and older who were chosen for layoffs with comparator information that would reveal if older workers were being disproportionately selected for termination.

7.      IBM's plan to replace its older employees with much younger ones was implemented and achieved its apparent purpose. Over the past six years, IBM discharged more than 20,000 workers who were age 40 or older and who worked at facilities in the United States. This longstanding, companywide campaign to target, discharge, and replace older workers demonstrates that discrimination against older workers has been the company's standard operating procedure—the regular, rather than the unusual practice—at IBM.

## II.    PARTIES

8.      Plaintiff Gary Roberts is a citizen of the United States and is a resident of Washington State. Plaintiff worked for IBM for 2 years, until he was terminated when he was 66 years old.

9.      Plaintiff HRH P. Michael Popa is a citizen of the United States and is a resident of New York. Plaintiff worked for IBM for 13 years, until he was terminated when he was 40 years old or older.

10.      Plaintiff R. Kevin Rodriguez is a citizen of the United States and is a resident of Florida. Plaintiff worked for IBM for 19 years, until he was terminated when he was 50 years old.

11.      Plaintiff Jonathan Rosenoer is a citizen of the United States and is a resident of Connecticut. Plaintiff worked for IBM for 3 years, until he was terminated when he was 62 years old.

12.      Plaintiff Mike Carrubba is a citizen of the United States and is a resident of Connecticut. Plaintiff worked for IBM for 20 years, until he was terminated when he was 56 years old.

13.      Plaintiff Bill Ellmore is a citizen of the United States and is a resident of Massachusetts. Plaintiff worked for IBM for 22 years, until he was terminated when he was 53 years old.

14.      Plaintiff Michael Butera is a citizen of the United States and is a resident of Florida. Plaintiff worked for IBM for 14 years, until he was terminated when he was 46 years old.

15.     Plaintiff Alanna Robinson-Bailey is a citizen of the United States and is a resident of Texas. Plaintiff worked for IBM for 22 years, until she was terminated when she was 44 years old.

16.     Plaintiff Kevin Monagle is a citizen of the United States and is a resident of Massachusetts. Plaintiff worked for IBM for 8 years, until he was terminated when he was 52 years old.

17.     Plaintiff Philip Philippides is a citizen of the United States and is a resident of Utah. Plaintiff worked for IBM for 2 years, until he was terminated when he was 60 years old.

18.     Plaintiff Darin Cross is a citizen of the United States and is a resident of Ohio. Plaintiff worked for IBM for 2 years, until he was terminated when he was 49 years old.

19.     Plaintiff Darrell Goff is a citizen of the United States and is a resident of Arkansas. Plaintiff worked for IBM for 6 years, until she was terminated when she was 47 years old.

20.     Plaintiff Demone Abrams is a citizen of the United States and is a resident of Georgia. Plaintiff worked for IBM for 26 years, until he was terminated when he was 51 years old.

21.     Plaintiff Ken Claflin is a citizen of the United States and is a resident of Massachusetts. Plaintiff worked for IBM for 2 years, until he was terminated when he was 58 years old.

22.     Plaintiff Alex Campos is a citizen of the United States and is a resident of Florida. Plaintiff worked for IBM for 2 years, until he was terminated when he was 43.

23.     Plaintiff Linda Reda is a citizen of the United States and is a resident of Florida. Plaintiff worked for IBM for 35 years, until she was terminated when she was 57 years old.

24.     Plaintiff Dwayne Picou is a citizen of the United States and is a resident of Texas. Plaintiff worked for IBM for 24 years, until he was terminated when he was 47 years old.

25.     Plaintiff Ignacio Angles is a citizen of the United States and is a resident of Kansas. Plaintiff worked for IBM for 2 years, until he was terminated when he was 54 years old.

26.     Plaintiff Nikhil Patel is a citizen of the United States and is a resident of North Carolina. Plaintiff worked for IBM for 3 years, until he was terminated when he was 40 years old or older.

27.     Plaintiff Deborah Young is a citizen of the United States and is a resident of North Carolina. Plaintiff worked for IBM for 35 years, until she was terminated when she was 59 years old.

28.     Plaintiff Jim Fyffe is a citizen of the United States and is a resident of Arizona. Plaintiff worked for IBM for 36 years, until he was terminated when he was 58 years old.

29.     Plaintiff Vidya Sagar is a citizen of the United States and is a resident of Georgia. Plaintiff worked for IBM for 2 years, until she was terminated when she was 57 years old.

30.     Plaintiff Heidi Pehrson is a citizen of the United States and is a resident of North Carolina. Plaintiff worked for IBM for 6 years, until she was terminated when she was 60 years old.

31.     Plaintiff Venkat Govindarajan is a citizen of the United States and a resident of Illinois. Plaintiff worked for IBM for many years, until they were terminated when they were 67 years old.

32.     Plaintiff Jeffrey Werner is a citizen of the United States and a resident of Illinois. Plaintiff worked for IBM for many years, until he were terminated when he were 58 years old.

33.     Plaintiff Robert Broughton is a citizen of the United States and a resident of Arkansas. Plaintiff worked for IBM for 1 year, until he was terminated when he was 58 years old.

34.     Plaintiff Piyush Gupta is a citizen of the United States and a resident of California. Plaintiff worked for IBM for 29 years, until they were terminated when they were 55 years old.

35.     Plaintiff Michael Matry is a citizen of the United States and a resident of Michigan. Plaintiff worked for IBM for 9 years, until he was terminated when he was 54 years old.

36.     Plaintiff Christopher Britton is a citizen of the United States and a resident of Connecticut. Plaintiff worked for IBM for 31 years, until he was terminated when he was 51 years old.

37.     Plaintiff Peter Toro is a citizen of the United States and a resident of New Jersey. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

38.     Plaintiff Cathy Carney is a citizen of the United States and a resident of Massachusetts. Plaintiff worked for IBM for many years, until she was terminated when she was 40 years old or older.

39.     Plaintiff Patrick O'Boyle III is a citizen of the United States and a resident of Virginia. Plaintiff worked for IBM for many years, until she was terminated when she was 40 years old or older.

40.     Plaintiff Sonja Cardoso is a citizen of the United States and a resident of Florida. Plaintiff worked for IBM for many years, until she was terminated when she was 40 years old or older.

41.     Plaintiff Kam Rezvani is a citizen of the United States and a resident of California. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

42.     Plaintiff Ron Howell is a citizen of the United States and a resident of North Carolina. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

43.     Plaintiff Jason Proctor is a citizen of the United States and a resident of Illinois. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

44.     Plaintiff Joshua Fox is a citizen of the United States and a resident of North Carolina. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

45.     Plaintiff Brad Gold is a citizen of the United States and a resident of North Carolina. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

46.     Plaintiff Jonathan Urban is a citizen of the United States and a resident of New Mexico. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

47.     Plaintiff Carlos Castillo is a citizen of the United States and a resident of California. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

48.     Plaintiff Hershel Bagley is a citizen of the United States and a resident of Washington D.C. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

49.     Plaintiff David Roknian is a citizen of the United States and a resident of Texxas. Plaintiff worked for IBM for many years, until he was terminated when he was 40 years old or older.

50.     Defendant IBM is a New York corporation with its principal place of business in Armonk, New York. IBM provides technology services and equipment, including computing, cloud services, software, hardware, and analytics, to customers around the world. IBM employs about 400,000 employees and ranked number 34 on the 2018 Fortune 500 rankings of the largest United States corporations by total revenue.

### III.     JURISDICTION AND VENUE

51.     This Court has subject matter jurisdiction over Plaintiffs' claims under 29 U.S.C. 626(b) (jurisdiction over any action to enforce the ADEA), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1343 (jurisdiction over civil rights actions) because this action arises under the ADEA.

52.     Each Plaintiff fell victim to a nationwide scheme nefariously designed to target and terminate older employees within IBM. Thus, all Plaintiffs' claims arise out of the same series of transactions or occurrences, and all Plaintiffs' claims concern common questions of law

and fact. All Plaintiffs are properly included in this action and accordingly assert the right to relief jointly and severally under Rule 20 of the Federal Rules of Civil Procedure.

53.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because IBM has its headquarters in Armonk, Westchester County, New York.

54.    Additionally, the White Plains courthouse is proper under Rule 18 of the Rules for the Division of Business of the U.S. District Court for the Southern District of New York because, upon information and belief, the policies and practices giving rise to the claims in this action were developed by senior IBM personnel operating out of the company's headquarters in Armonk, Westchester County, New York.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

55.    More than 50 former IBM employees filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that IBM discriminated against them because of their age when it laid them off in Resource Actions beginning in 2013.

56.    A number of those charges specifically alleged age discrimination on a class-wide basis, alleging that IBM had discriminated against many employees 40 years old and older, or alleged that IBM had engaged in a companywide discriminatory pattern and practice of firing older workers or both.

57.    For example, on May 6, 2016, Margaret Ahlders filed a class-based charge of discrimination with the EEOC, alleging that IBM had terminated her and other older employees at IBM because of their age.

58.    On December 16, 2016, Ms. Ahlders filed an amended charge. In the amended charge, she included a section labeled "Collective Action (ADEA)," which stated in part, "I believe that the discrimination I experienced at IBM is part of a company, region, division or

business unit, and/or nationwide pattern or practice of discrimination by IBM against older employees as a class in their termination policies . . . ."

59.     Ms. Ahlders later filed a court complaint challenging the collective action waiver in IBM's separation agreement and seeking to proceed with an age discrimination collective action. And she has now filed an individual arbitration demand alleging systemic age discrimination by IBM.

60.     On May 9, 2018, Edvin Rusis filed a class-based charge of discrimination with the EEOC alleging that he and "thousands of other employees have been discriminated against by IBM on the basis of age." He later filed a putative collective action complaint in this judicial district on September 17, 2018, alleging that IBM discriminated against him and other older workers by laying them off disproportionality to younger workers and by failing to hire Mr. Rusis and other older workers for open positions for which they were qualified. See Complaint at 7, *Rusis v. IBM,* No. 1:180-cv-08434-VEC-SLC (S.D.N.Y. Sept. 17, 2018), ECF No. 1.

61.     The EEOC conducted a lengthy class-wide investigation of these and other charges. See Exhibit A. Its investigation spanned IBM's Resource Actions from 2013-2018. Based on its analysis of statistical data and "corroborating testimony from dozens of witnesses nationwide," it found "reasonable cause to believe that [IBM] has discriminated against" these older IBM workers because of their age. Id.

62.     The EEOC found that IBM's termination of employees like Plaintiffs was part of a systemic and long-term plan devised by top management to replace older workers with early career hires in group layoffs between 2013 and 2018.

63.     The EEOC's investigation showed that IBM's mass layoffs had an "adverse impact" on employees over 40, and it "uncovered top-down messaging from [IBM]'s highest

11

ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." Id.

64.    The EEOC issued a Notice of Right to Sue on August 27, 2021.

65.    Because the EEOC and IBM have been on notice since before 2015 of allegations that IBM has an ongoing company-wide practice of terminating older workers through Resource Actions and replacing them with younger workers, and because the EEOC investigated whether IBM was engaged in a top-down pattern of discrimination in all its Resource Actions between 2013 and 2018, Plaintiffs are permitted to "piggyback" on their former co-workers' class-based charges. See Tolliver v. Xerox Corp. 918 F.2d 1052, 1058 (1990) (holding that plaintiffs who did not file administrative claims of their own are able to piggyback on the claims of plaintiffs in another action who did when there is "some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim").

66.    Plaintiffs have therefore exhausted their administrative remedies under the ADEA.

## V.    ALLEGATIONS

### A.    IBM Adopts a Companywide Bias against Older Workers.

67.    For years, as part of an effort to refocus its hiring and marketing strategies to appeal to a younger, "Millennial" customer base, IBM has engaged in a pattern and practice of systematically using companywide criteria and procedures designed rid itself of older workers in large-scale layoffs to make room for younger workers. This policy was officially described as an effort to "correct [the] seniority mix" at the company in a presentation given to Diane Gherson, IBM's Senior Vice President of Human Resources, and James Kavanaugh, now IBM's Chief Financial Officer.

68.    This scheme was the culmination of years of review and discussion within the company that stereotyped older workers as rigid and unreceptive to new technology while praising "Millennial" employees as innovative.

69.    For example, in 2006, IBM's internal analysis of its employee demographics by one of the company's consulting departments described older workers as "gray hairs" and "old heads."  This analysis concluded that younger workers "are generally much more innovative and receptive to technology than baby boomers," and that therefore transforming the company's "organizational technology" to focus on younger workers "can yield substantial and permanent incremental capabilities and increases in productivity."[1]

70.     In later years, IBM amplified its policy of preferring younger workers, to the detriment of its older employees. In 2014, new IBM Chief Executive Officer Virginia "Ginni" Rometty conducted a major overhaul of the company to focus more on "CAMS," an acronym for Cloud-Analytics-Mobile-Security & Social Media. A presentation, titled "CAMS are Driven By Millennial Traits," was made at a 2014 IBM event in New York.

71.    The slides in that presentation claimed that Millennials typically exhibit desirable work attributes, like placing trust in data and reaching decisions through collaboration and consensus, while individuals over 50 typically exhibit undesirable work attributes, like being "more dubious" of analytics, placing "less stock in data," and being less "motivated to consult their colleagues to get buy in." The IBM slides concluded that "It's Baby Boomers who are the outliers."[2]

---

[1] *See* IBM, *The Maturing Workforce: Innovation in Workforce Enablement* (2006), https://assets.documentcloud.org/documents/4414883/Maturing-Workforce-feus01291-1.pdf.
[2] Peter Gosselin & Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (Mar. 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/ ; *see also* Christian Sarkar, *"Marketing and the Millennial Mindset"- An Interview with IBM's Samantha Klein*, The Marketing Journal (June 3, 2016), http://www.marketingjournal.org/marketing-and-the-millennial-mindset-an-interview-with-ibms-samantha-klein/ ("The secret to capturing the hearts, minds, and most importantly, wallets of the millennial generation is likely

72.     During that same event, titled "Reinvention in the Age of the Millennial," IBM personnel discussed ways the company could "better embrace the Millennial Mindset."[3] At around the same time, IBM launched a company-sponsored blog called "The Millennial Experience" and a social media campaign using the Twitter hashtag, #IBMillennial.  It also created "Millennial Corps," a network of young employees who would be consulted by IBM senior leadership about business decisions.

73.     In 2015 and 2016, IBM doubled down on its efforts to replace its long-tenured, older employees with the younger Millennials it sought to recruit. IBM made presentations to senior IBM executives calling for them to evaluate long-term employees more harshly, to use those negative evaluations to justify selecting long-term employees for group terminations, and to replace more experienced employees with "EPs"—IBM management short-hand for "early professionals."[4]

74.     As one news article touting IBM's Millennial-focused approach explained, "[t]he idea" behind IBM "pushing for 'early professional hiring' (EPH)" was "to bring in as much young talent into the workforce with every given opportunity." A Vice President at IBM defined "early professionals" as engineers with "two or three years' experience" or consultants with "one or two years' experience," who would then be "fast forwarded" to high-level positions.[5]

75.     Presentations prepared in 2015 and 2016 for IBM executives included plans for IBM to adopt an "aggressive performance management posture" and double the share of

---

working with you. Your millennial employees are your most valuable and accessible asset when it comes to successfully marketing your business to the millennial generation.").

[3] *See, e.g.*, Krista Sande-Kerback, *"Reinvention in the Age of the Millennial,"* IBM Ctr. for Applied Insights (Dec. 16, 2014), https://ibmcai.wordpress.com/tag/reinvention-in-the-age-of-the-millennial/.

[4] *See* Gosselin & Tobin, *supra* note 2.

[5] Shivani Shinde Nadhe, *IBM new team to focus on millennials,* Bus. Standard (May 31, 2016, 2:07 PM), https://www.business-standard.com/article/companies/ibm-s-new-team-to-focus-on-millennials-116053000677_1.html.

employees given negative evaluations, to use those negative evaluations to select 3,000 employees for group terminations, and to replace the majority of those laid off with "early professionals."

76.    Likewise, another presentation included plans for "an influx of EPs" to "correct" the company's "seniority mix." This presentation also called for a more "aggressive performance management approach" to facilitate a reduction of 2,500 employees.  IBM's Human Resources Vice President Diane Gherson and IBM's current Chief Financial Officer James Kavanaugh attended the presentation.

77.    A 2016 presentation prepared for IBM executives specifically called for managers to exempt all "early professional hires" from layoffs, regardless of performance. Long-term and generally much older employees were provided no such exemption.

78.    Based on these presentations and other evidence, the EEOC has found that there was "top-down messaging from [IBM]'s highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires."

    **B.**     **IBM Targets Older Workers for Termination in "Resource Actions."**

79.    In the past six years alone, IBM has eliminated tens of thousands of American employees ages 40 and over.

80.    IBM targeted older workers for group layoffs while favoring disproportionately younger groups of workers, such as "early professionals" and recent college graduates, by classifying them as exempt (or protecting them in whole or in part) from termination through Resource Actions.

81.     Thus, IBM skewed the pool of employees vulnerable to termination in Resource Actions heavily toward employees with long careers and a long tenure at the company, who were typically at least 40 years old and who were disproportionally older than the average employee. Indeed, the EEOC's statistical analysis of data from 2013 to 2018 found that "it was primarily older workers (85.85%) in the total potential pool of those considered for layoff." Exhibit A.

82.     In the run-up to Resource Actions, IBM's policy and practice was to direct its first-line managers to engage in more "aggressive performance management" of older employees by issuing them lower annual performance evaluations. Under IBM's performance evaluation system, workers receive a score of 1, 2+, 2, 3, or 4 from their first-line manager, with 1 being the highest score and 4 being the lowest. A score of 2 was considered a solid score (and a "2+" a great score), while a 3 meant that the employee's performance needed improvement.

83.     IBM directed first-line managers to reduce the number of 1s and 2+s given to employees and to rate the performance of more employees with scores of 3 and 4. As part of its companywide discriminatory policies and practices, IBM then relied on these lower scores and alleged performance deficiencies as pretext for selecting older workers for layoffs.

84.     IBM created a centralized system for ensuring that Resource Actions disproportionally removed its older workers. For each Resource Action, first-line managers were notified of the percentage of employees in their division who had to be terminated and were asked to recommend candidates for removal, based in part on the low performance evaluations the first-line manager had already given at the direction of higher-level executives.

85.     The first-line managers' recommendations for layoffs were ultimately reviewed and approved or denied by a central decision-making unit made up of IBM's Human Resources

and Legal departments. This central decision-making unit regularly considered employees' ages and proximity to retirement eligibility in making final Resource Action decisions.

86.    IBM used its discriminatory policies and practices to engineer its Resource Actions and terminations to get rid of older workers to make room for much younger workers. It has achieved its company-wide goal of correcting the "seniority mix" of its workforce to produce a much younger one.

87.    IBM's layoffs since 2014 have disproportionately eliminated workers who were age 40 and older and increased the percentage of the younger Millennial workers that it coveted.

88.    A federal court has ruled that "internal IBM corporate planning documents" provide a reasonable basis to find that "IBM executives sought to lay off older workers in an effort to hire a younger workforce." Order Adopting R. & R. of the U.S. Magistrate Judge, Den. IBM's Mot. for Summ. J., Langley v. IBM., No. 18-CV-00443-DAE, 2020 WL 8052973, at *4 (W.D. Tex. Feb. 28, 2020), ECF No. 216 (denying summary judgment to IBM on age discrimination claims by employee who was terminated from IBM at age 59 in a 2017 Resource Action).

89.    The Langley court ordered IBM to produce high-level planning documents and communications from its most senior executives including Chief Executive Officer Ginni Rometty, Chief Financial Officer James Kavanaugh, Chief Human Resources Officer Diane Gherson. In its Order, the Court rejected IBM's "argument that discovery should be cabined based on an arbitrary boundary," finding that its resistance to company-wide discovery was "highly suspect." Langley, ECF No. 211, at 11.

90.    The Langley court specifically found that the "abundant public and internal statements of IBM's CEO and CFO in promoting the company's need to 'refresh' its workforce"

provide a reasonable basis to believe that lower-level managers "were following company directives when directing their own subordinates where to cut costs in the [Resource Action]." ECF No. 216 at 12.

91.     Likewise, the court concluded that internal IBM documents "suggest that high level IBM executives were encouraging managers to lay off workers like [the plaintiff] to make room for younger employees." R. & R. of U.S. Magistrate Judge, Langley v. Int'l Business Machines Corp., No. 1:18-cv-00443-DAE, at 8 (W.D. Tex. December 23, 2019), aff'd by Langley (W.D. Tex. Feb. 28, 2020), ECF No. 201.

92.     Some of the evidence relied on by the Langley court included documents describing corporate objectives as "[i]ncreas[ing] early professional hiring"; comparing year over year hiring of "early professionals" in a department and suggesting how to increase the percentage of early professional hires; and setting a policy excluding early professional hires from Resource Actions.

93.     The Langley court held that the IBM documents provided a reasonable basis for a jury to find that IBM's alleged decision-maker "was in fact effectively told whom to lay off." Further, the court found that managers were required to meet "headcount" quotas that favored hiring younger workers and disfavored retaining or rehiring older workers.

## VI.    CAUSES OF ACTION

### A.    CLAIM FOR RELIEF

**Age Discrimination in Employment Act, 29 U.S.C. Sections**

**621-634 (On Behalf of All Plaintiffs Against Defendant)**

94.    Plaintiffs incorporate by reference all allegations in this Complaint.

95.    IBM terminated Plaintiffs because of their age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1).

96.    IBM's violation of the ADEA was knowing and willful.

97.    As the direct and proximate result of IBM's age discrimination, Plaintiffs have lost their jobs and sustained and will continue to sustain wage and benefit losses, and have incurred and will continue to incur out-of-pocket pecuniary losses, including items such as replacement costs for medical insurance.

98.    As the direct result of Defendant's pretextual reasons proffered for termination, plaintiffs have lost earnings capacity.

## VII.    PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court enter judgment and grant the following relief against Defendant as follows:

(a)    IBM be ordered to pay each Plaintiff his or her back pay and benefits with interest;

(b)    Final judgment in favor of each Plaintiff against IBM be entered for liquidated damages in an amount equal to the amount of back pay and benefits due to that Plaintiff;

(c)    IBM be ordered to reinstate Plaintiffs to their respective former positions with all lost pay and benefits, seniority, and promotions;

19

(d)    In the alternative, IBM be required to pay Plaintiffs front pay and benefits if reinstatement is not feasible;

(e)    That Plaintiffs be awarded compensation for the adverse tax consequences of their recovery of wages and benefits in a lump sum;

(f)    That Plaintiffs be awarded the costs and expenses of this litigation and their reasonable attorney's fees;

(h) That Plaintiff be awarded pre- and post-trial interest;

(i) That IBM be enjoined from discriminating against employees in any manner similar to the violations of the ADEA alleged here;

(j)  That Plaintiffs be granted such further legal and equitable relief as the Court may deem just and proper.


Respectfully submitted,


Date: November 24, 2021

/s/ *Michael B. Eisenkraft*
Michael Eisenkraft
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Email: meisenkraft@cohenmilstein.com


Joseph M. Sellers
Brian Corman
Cohen Milstein Sellers & Toll P.L.L.C.
1100 New York Avenue, N.W. Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Email: jsellers@cohenmilstein.com
Email: bcorman@cohenmilstein.com

Steven M. Tindall
Dylan S. Hughes
Ashleigh A. Musser
Gibbs Law Group LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Tel: (510) 350-925
E-mail: smt@classlawgroup.com
E-mail: dsh@classlawgroup.com
E-mail: aam@classlawgroup.com

David G. Webbert
Carol J. Garvan
Shelby H. Leighton
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332
Tel: (207) 623-5110
Email: jyoung@work.law
Email: dwebbert@work.law
Email: cgarvan@work.law
Email: sleighton@work.law

*Attorneys for Plaintiffs*