# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| R. Kevin Rodriguez, Jonathan Rosenoer, Bill Ellmore, Michael Butera, Alanna Robinson-Bailey, Kevin Monagle, Darin Cross, Darrell Goff, Deborah Young, Vidya Sagar, Cathy Carney, Patrick O'Boyle III, Kam Rezvani, Ron Howell, Jason Proctor, Jonathan Urban,<br><br><br>        Plaintiffs,<br><br>    v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>        Defendant. | Docket No.: 7:21-CV-09928-VLB |

## SECOND AMENDED COMPLAINT

Plaintiffs R. Kevin Rodriguez, Jonathan Rosenoer, Bill Ellmore, Michael Butera, Alanna Robinson-Bailey, Kevin Monagle, Darin Cross, Darrell Goff, Deborah Young, Vidya Sagar, Cathy Carney, Patrick O'Boyle III, Kam Rezvani, Ron Howell, Jason Proctor, and Jonathan Urban bring this action against International Business Machines Corporation (IBM) under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634, and allege as follows:

## I.    SUMMARY OF ACTION

1.    The U.S. Equal Employment Opportunity Commission (EEOC) conducted a lengthy and in-depth investigation of the complaints of many older IBM employees who were terminated around the same time as Plaintiffs. Based on its analysis of statistical data and "corroborating testimony from dozens of witnesses nationwide," the EEOC found "reasonable cause to believe

that [IBM] has discriminated against" these older IBM workers because of their age. *See* Exhibit A.

2.      The EEOC further found that termination of employees like Plaintiffs through group layoffs between 2013 and 2018 was part of a systemic and long-term plan devised by top management to replace older workers with younger career hires. The EEOC's investigation concluded that IBM's mass layoffs had an "adverse impact" on employees ages 40 and over, and it "uncovered top-down messaging from [IBM]'s highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." *Id.*

3.      The EEOC's investigation produced dozens of witnesses who confirmed IBM's discriminatory scheme. *Id*. This federal agency concluded that IBM's explanation for its disproportionate layoff decisions "[did] not withstand scrutiny." *Id*.

4.      Plaintiffs challenge IBM's systematic replacement of its older employees with much younger workers. In an effort to rebrand its image and shift its recruiting focus to "Millennials," or people born between 1980 and 1996, IBM carried out a company-wide scheme of discharging its older workers through group terminations, known at IBM as "Resource Actions," in violation of the ADEA.

5.      IBM devised and implemented company-wide policies and practices to effectuate its discriminatory scheme to replace older workers with younger workers, including: (a) directing its managers to give lower performance evaluation scores and take other adverse actions against older workers in order to provide a purported basis on which to select those workers for termination via Resource Actions; (b) exempting or protecting from layoff "early professionals" and recent college graduates, who are much younger than the average IBM employee; and (c) taking affirmative steps

to keep its workforce and the public in the dark about its discriminatory practices, including falsely classifying Resource Action terminations as retirements or performance-based terminations.

6.     To further cover up its unlawful massive layoffs of older workers and insulate its actions from legal challenge, IBM ended its longstanding practice, dating back to at least 2001, of providing employees ages 40 and older who were chosen for layoffs with comparator information that would reveal if older workers were being disproportionately selected for termination.

7.     IBM's plan to replace its older employees with much younger ones was implemented and achieved its apparent purpose. Over the past six years, IBM discharged more than 20,000 workers who were age 40 or older and who worked at facilities in the United States.   This longstanding, companywide campaign to target, discharge, and replace older workers demonstrates that discrimination against older workers has been the company's standard operating procedure—the regular, rather than the unusual practice—at IBM.

## II.    PARTIES

8.     Plaintiff R. Kevin Rodriguez is a citizen of the United States and is a resident of Florida. Plaintiff worked for IBM for 19 years, until he was terminated when he was 50 years old. On or around May 19, 2016, Mr. Rodriguez was notified by IBM that he would be laid off as part of a Resource Action. His employment with IBM ended on or around August 17, 2016. During this time, Mr. Rodriguez attempted to find other positions within IBM to which he could apply, but he was told this was not possible. Mr. Rodriguez was also told by IBM management and other employees that IBM's layoffs were part of an effort to remove older workers from the company.

9.     Plaintiff Jonathan Rosenoer is a citizen of the United States and is a resident of Connecticut. Plaintiff worked for IBM for 3 years, until he was terminated when he was 62 years old. During his tenure, he was a highly regarded and reviewed employee and was awarded the

prestigious Master Inventor Designation. Although Mr. Rosenoer's employment file says that his termination was voluntary, Mr. Rosenoer's manager told him that his position was being eliminated and he had 90 days to find a new job, and that if he was not hired into a new position in 90 days, he would be terminated. Between March and June of 2019, Mr. Rosenoer applied for numerous internal positions and interviewed for several. His applications for all these positions were rejected without explanation. While Mr. Rosenoer was attempting to find a new internal position within IBM, he observed that younger IBM employees were being transferred to new positions within the company, while older employees were told, like Mr. Rosenoer, that they had 90 days to find a new position, or they were simply let go immediately. Mr. Rosenoer also observed that older employees were not accepted for new positions and were therefore terminated. Mr. Rosenoer therefore believes his termination was part of IBM's strategy to unlawfully remove its older employees. His employment with IBM ended on or around June 3, 2019.

10.     Plaintiff Bill Ellmore is a citizen of the United States and is a resident of Massachusetts. Plaintiff worked for IBM for 22 years, until he was terminated when he was 53 years old. In or around November 2018, Mr. Ellmore was notified by IBM that he would be laid off as part of a Resource Action. His employment with IBM ended on or around February 15, 2019. During that time, Mr. Ellmore was tasked with laying off other workers as part of Resource Actions and observed that the employees being targeted for layoffs were the older workers, and he was told to exclude from layoffs the younger workers.

11.     Plaintiff Michael Butera is a citizen of the United States and is a resident of Florida. Plaintiff worked for IBM for 14 years, until he was terminated when he was 46 years old. On or around December 1, 2015, Mr. Butera was notified by IBM that he was being terminated. The reason given to Mr. Butera for the termination was that he had been involved with the installation

of an appliance which violated company policy, but he was not told what appliance or what policy had been violated. Mr. Butera had reported the installation of an appliance in March 2014 to his superiors, but he was never told at the time, or at any time up to his termination, that any policy had been violated or that he had acted improperly in any way. His employment with IBM ended on or around November 30, 2015. Mr. Butera subsequently filed an appeal with IBM, explaining that the termination was wrongful and unjustified, especially in light of his successful and spotless career over 14 years at IBM. Mr. Butera did not receive a written response to this appeal. Mr. Butera was told by phone that the IBM appeals committee had denied his appeal, without further explanation. Mr. Butera therefore believes that the reason given for his termination was pretextual and used to hide the fact that his layoff was part of an age-based Resource Action or comparable group layoff.

12.     Plaintiff Alanna Robinson-Bailey is a citizen of the United States and is a resident of Texas. Ms. Robinson-Bailey worked for IBM for 22 years, until she was terminated when she was 44 years old. In September 2017, Ms. Robinson-Bailey started a new position within IBM. Without any opportunity to prove her success in the new position, IBM placed her on a performance improvement plan that same month. After being placed on the performance improvement plan, she continuously emailed her manager and the application technical lead, asking for evaluation criteria so she would know how to satisfy the requirements of the plan.  Ms. Robinson-Bailey does not recall receiving responses to these emails, notwithstanding her continuous requests for assistance. Given the lack of response from her supervisors, Ms. Robinson-Bailey subsequently reached out to other colleagues, who told her that they had been instructed not to help her. Towards the end of her plan, the technical lead told her that she should not bother finishing the requirements of the plan because he did not believe she could meet them. Even so, she completed the final project in

a timely manner. Her manager then told her that her completion of the plan was not satisfactory and she was terminated effective immediately. Ms. Robinson-Bailey asked IBM for reconsideration of her termination, but no reconsideration was made. Ms. Robinson-Bailey knows of others, over the age of 40, who were also put on performance improvement plans around the same time she was and ultimately terminated in the same manner. Ms. Robinson-Bailey therefore believes this termination was wrongful and part of a Resource Action or comparable group layoff. Her employment with IBM ended on or around November 24, 2017.

13.    Plaintiff Kevin Monagle is a citizen of the United States and is a resident of Massachusetts. Plaintiff worked for IBM for 8 years, until he was terminated when he was 52 years old. On or around July 10, 2015, Mr. Monagle was notified by IBM that he was being terminated, which he believes was part of a Resource Action or comparable group layoff. His employment with IBM ended on or around July 24, 2015. During this time, Mr. Monagle was told by a manager within IBM that presentations had been made that were focused on replacing the company's older workforce with a younger workforce and strategies to accomplish this, including laying off older workers and replacing them with younger workers. Mr. Monagle was told that his termination was because of his relationship with his direct supervisor, but Mr. Monagle believes this supervisor targeted him for termination because Mr. Monagle was being given multiple assignments at one time that could not be simultaneously performed, and despite the fact that Mr. Monagle had previously received good performance reviews and merit-based bonuses. Mr. Monagle had observed other older workers who had been treated similarly, while younger workers were not. Mr. Monagle therefore believes that the reason given for his termination was pretextual and used to hide the fact that his layoff was part of an age-based Resource Action or comparable group layoff.

6

14.    Plaintiff Darin Cross is a citizen of the United States and is a resident of Ohio. Plaintiff worked for IBM for 2 years, until he was terminated when he was 49 years old. On or around July 26, 2019, Mr. Cross was notified by IBM that he would be laid off, which he believes was part of a Resource Action or comparable group layoff. His employment with IBM ended on or around July 26, 2019. At the time, Mr. Cross was provided no reason for the termination. IBM wrote in Mr. Cross' employment file that he was terminated due to gross misconduct, but Mr. Cross has been provided no information – nor does he believe any exists – that would justify a termination for this reason. Mr. Cross therefore believes that the reason stated in his employment file for his termination was pretextual and used to hide the fact that his layoff was part of an age-based Resource Action or comparable group layoff.

15.    Plaintiff Darrell Goff is a citizen of the United States and is a resident of Arkansas. Plaintiff worked for IBM for 6 years, until he was terminated when he was 47 years old. On or around June 11, 2021, Mr. Goff was notified by IBM that he was being laid off as part of a Resource Action. Mr. Goff's employment ended on or around June 14, 2021. In the weeks leading up to Mr. Goff's layoff, IBM began sending Mr. Goff emails stating that he was not meeting performance expectations. However, Mr. Goff had been meeting his performance expectations up until he began receiving these emails, and believes these emails raised issues that were either incorrect or were not in any way grounds for termination. And Mr. Goff was not provided any time to address these emails and improve any perceived performance issues before he was abruptly terminated. At the time he was terminated, Mr. Goff was also not told that his layoff was because of performance but was instead informed that the layoff was a Resource Action. Mr. Goff therefore believes that the reasons given for his layoff after he was terminated were pretextual and used to hide the fact that his layoff was part of an age-based Resource Action.

16.     Plaintiff Deborah Young is a citizen of the United States and is a resident of North Carolina. Plaintiff worked for IBM for 35 years, until she was terminated when she was 59 years old. In or around March 2016, Ms. Young was notified by IBM that she would be laid off as part of a Resource Action. Her employment with IBM ended around June 1, 2016. During this time, Ms. Young observed that IBM management was promoting younger workers with the same or lower level of experience and/or education as her. Ms. Young also observed that IBM removed job postings during the Resource Action, making it impossible to find other positions internally within IBM.

17.     Plaintiff Vidya Sagar is a citizen of the United States and is a resident of Georgia. Plaintiff worked for IBM for about one year, until he was terminated when he was 57 years old. On or around May 7, 2019, Mr. Sagar was notified by IBM that he was being laid off. At that time, his supervisor read him a pre-written paragraph stating that he was terminated, but he was provided no further explanation for his termination and did not receive any documentation reflecting any reasons. IBM wrote in Mr. Sagar's employment file that he was terminated due to gross misconduct, but Mr. Sagar has been provided no information – nor does he believe any exists – that would justify a termination for this reason. He noticed that at the time of his termination, other employees 40 years old or older were "leaving" IBM. He believes they, too, were terminated. After his employment ended, Mr. Sagar attempted to obtain employment in other positions within IBM, but never received any responses to any of these attempts. Mr. Sagar therefore believes his termination was part of a Resource Action or comparable age-based group layoff.

18.     Plaintiff Cathy Carney is a citizen of the United States and a resident of Massachusetts. Plaintiff worked for IBM for 22 years, until she was terminated when she was 59 years old. On or around November 15, 2017, Ms. Carney was notified by IBM that she would be

laid off, which she believes was part of a Resource Action or comparable group layoff. Her employment with IBM ended on or around December 1, 2017. Ms. Carney observed that approximately 300 other older IBM employees were being laid off around the same time.

19.    Plaintiff Patrick O'Boyle III is a citizen of the United States and a resident of Virginia. Mr. O'Boyle worked for IBM for 6 years, until he was terminated when he was 59 years old. Mr. O'Boyle was a consistent over-performer who did not receive negative feedback from managers. In fact, he received awards for being in the "100% Club," demonstrating his above-and-beyond performance. However, in February 2020, after receiving a new geographic sales territory the prior month, he was told by email that he had to focus on certain geographic locations. Mr. O'Boyle believes that this email ultimately became his performance improvement plan, which he subsequently received in May 2020, because it included the same information he had previously received by email. At this point, however, because the second sales quarter ended at the end of June, he only had about 30 days to satisfy the performance improvement plan. IBM employees are customarily given 6 months to satisfy a performance improvement plan. Given the limited amount of time he had to complete the plan, Mr. O'Boyle met most but not all of the requirements within the 30 days. Mr. O'Boyle's manager then told Mr. O'Boyle that he was close enough to meeting the requirements and assured him that upper management would take him off the plan. However, on or around August 21, 2020, Mr. O'Boyle was notified via telephone by this same IBM manager that he was being terminated. The reason this manager provided was that Mr. O'Boyle did not fulfill the terms of his performance improvement plan, which is the same reason provided in his employment file. During the conversation with his manager, Mr. O'Boyle noticed that his manager was distressed by communicating this decision to him. Mr. O'Boyle decided to contact his manager's superior, who told Mr. O'Boyle the same – that he was being terminated because he

did not meet the terms of his performance improvement plan. Mr. O'Boyle further protested that he was only given the performance improvement plan 30 days ahead of time. This upper manager told Mr. O'Boyle that there was nothing she could do. Mr. O'Boyle asked if he could transfer to a different position, as he felt he was being targeted for termination. This superior told him that he could not – she told him that he was too expensive as a Band 9 employee, and he could be replaced with a younger, lower Band employee. The person who replaced Mr. O'Boyle was in their 20's. Mr. O'Boyle contacted other employees at IBM to see if he could transfer or apply for other positions and was told that they were only accepting "summit" hires – IBM's code that it was only hiring recent college graduates. Mr. O'Boyle's employment ended on or around August 21, 2020. During this time, Mr. O'Boyle observed that only younger workers were allowed to apply for certain positions within IBM. Mr. O'Boyle therefore believes his termination was part of a Resource Action or comparable group layoff because of his age.

20.     Plaintiff Kam Rezvani is a citizen of the United States and a resident of California. Plaintiff worked for IBM for approximately 1.5 years, until he was terminated when he was 55 years old. In or around November 2015, Mr. Rezvani was notified by IBM that he was being laid off. This layoff was part of a group layoff, which he believes was part of a Resource Action. Mr. Rezvani's employment ended on or around December 14, 2015.

21.     Plaintiff Ron Howell is a citizen of the United States and a resident of North Carolina. Plaintiff worked for IBM for 24 years, until he was terminated when he was 64 years old. On or around December 19, 2019, Mr. Howell was notified by IBM that he was being laid off, which he believes was part of a Resource Action or comparable group layoff. Mr. Howell's employment ended on or around December 19, 2019. Mr. Howell was not given a reason for the termination at that time. Mr. Howell later attempted to appeal his termination and was told by IBM that the

termination was because he had attended a non-IBM presentation while at IBM, on his own time, to gain knowledge relevant to his work at IBM. Mr. Howell then filed a written appeal with IBM, stating that the termination was unjustified and mistaken, given that any misunderstanding over whether Mr. Howell could attend this presentation had no effect on IBM, and detailing his excellent work history with and loyal service to IBM during his 24-year career there. Mr. Howell asked that his termination be reconsidered, explaining the hardship the termination had on him and his family. Mr. Howell did not receive a response to this appeal. Mr. Howell therefore believes that the reason given for his termination was pretextual and used to hide the fact that his layoff was part of an age-based Resource Action or comparable group layoff. After his layoff, Mr. Howell also attempted to apply for the same position within IBM from which he had been laid off, and despite his excellent reviews when he had this position, he was told that he could not apply.

22.   Plaintiff Jason Proctor is a citizen of the United States and a resident of Illinois. Plaintiff worked for IBM for 2 years, until he was terminated when he was 47 years old.  In or around September 2019, IBM told Mr. Proctor that he was being terminated because he did not gain approval for certain work travel. His employee file indicates that he was terminated because he failed to comply with company policy and practice. Mr. Proctor engaged in the same travel as a large group of IBM employees – most of whom were under the age of 40 – but Mr. Proctor was the only employee who was terminated for this same travel. Mr. Proctor's employment ended on or around November 15, 2019. During this time, Mr. Proctor applied for multiple positions within IBM, but was denied without reason. Mr. Proctor also observed that IBM was replacing its older workers with younger workers as part of Resource Actions. Mr. Proctor therefore believes his termination was part of a Resource Action or comparable age-based group layoff.

23.     Plaintiff Jonathan Urban is a citizen of the United States and a resident of New Mexico. Plaintiff worked for IBM for 7 years, until he was terminated when he was 48 years old. On or around January 19, 2021, Mr. Urban was told he was being terminated because one of the IBM employees he managed submitted an incorrect expense report. His employee file indicates that this expense issue arose to the level of gross misconduct. Mr. Urban does not believe this was grounds for termination, as expenses are regularly reviewed and corrected by upper management. Given the fact that Mr. Urban spoke with IBM frequently about expenses, which was common practice, he believes that the reason he was terminated was part of a larger strategy to lay off older employees, and that his termination was part of a Resource Action or comparable age-based group layoff.

24.     Defendant IBM is a New York corporation with its principal place of business in Armonk, New York. IBM provides technology services and equipment, including computing, cloud services, software, hardware, and analytics, to customers around the world. IBM employs about 400,000 employees and ranked number 34 on the 2018 Fortune 500 rankings of the largest United States corporations by total revenue.

### III.   JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over Plaintiffs' claims under 29 U.S.C. 626(b) (jurisdiction over any action to enforce the ADEA), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1343 (jurisdiction over civil rights actions) because this action arises under the ADEA.

26.     Each Plaintiff fell victim to a nationwide scheme nefariously designed to target and terminate older employees within IBM. Thus, all Plaintiffs' claims arise out of the same series of transactions or occurrences, and all Plaintiffs' claims concern common questions of law and fact.

All Plaintiffs are properly included in this action and accordingly assert the right to relief jointly and severally under Rule 20 of the Federal Rules of Civil Procedure.

27.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because IBM has its headquarters in Armonk, Westchester County, New York.

28.    Additionally, the White Plains courthouse is proper under Rule 18 of the Rules for the Division of Business of the U.S. District Court for the Southern District of New York because, upon information and belief, the policies and practices giving rise to the claims in this action were developed by senior IBM personnel operating out of the company's headquarters in Armonk, Westchester County, New York.

### IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

29.    More than 50 former IBM employees filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that IBM discriminated against them because of their age when it laid them off in Resource Actions beginning in 2013.

30.    A number of those charges specifically alleged age discrimination on a class-wide basis, alleging that IBM had discriminated against many employees 40 years old and older, or alleged that IBM had engaged in a companywide discriminatory pattern and practice of firing older workers or both. Many of the former IBM employees who filed charges of age discrimination with the EEOC subsequently filed lawsuits.

31.    On May 5, 2014, Plaintiffs John McCormack, Mark Lingl, and Ron Shelton filed a class action complaint against alleging that IBM engaged in a nationwide campaign of targeting thousands of older workers for group layoffs to make way for a younger workforce, in violation of the ADEA. *See* Compl. at 3-10, *McCormack v. IBM*, 145 F. Supp. 3d 258 (S.D.N.Y. 2015), ECF No. 1 (attached as Exh. B). Mr. McCormack was laid off in December 2013, Mr. Lingl was laid

off in July 2013, and Mr. Shelton was laid off in July 2013. *Id*. at 2-3. All three plaintiffs filed timely charges of age discrimination with the EEOC. *Id*. at 3.

32.    On May 6, 2016, Margaret Ahlders filed a class-based charge of discrimination with the EEOC, alleging that IBM had terminated her and other older employees at IBM because of their age.

33.    On December 16, 2016, Ms. Ahlders filed an amended charge. In the amended charge, she included a section labeled "Collective Action (ADEA)," which stated in part, "I believe that the discrimination I experienced at IBM is part of a company, region, division or business unit, and/or nationwide pattern or practice of discrimination by IBM against older employees as a class in their termination policies . . . ."

34.    Ms. Ahlders later filed a court complaint challenging the collective action waiver in IBM's separation agreement and seeking to proceed with an age discrimination collective action. And she has now filed an individual arbitration demand alleging systemic age discrimination by IBM.

35.    On November 8, 2016, Cheryl Witmer filed a class-based charge of discrimination with the EEOC, alleging that IBM had terminated her and other older employees at IBM because of their age. Ms. Witmer's charge of discrimination was one of the charges that was consolidated for investigation and determination with more than 50 former IBM employees who filed related charges alleging that IBM discriminated against them because of their age when it laid them off in Resource Actions beginning in 2013.

36.    On November 10, 2016, Steven Estle filed a charge of discrimination with the EEOC, alleging that IBM had terminated him and other older employees at IBM because of their age. Mr. Estle's charge of discrimination was one of the charges that was consolidated for investigation and

determination with more than 50 former IBM employees who filed related charges alleging that IBM discriminated against them because of their age when it laid them off in Resource Actions beginning in 2013.

37.    On November 28, 2016, Lance Salonia filed a charge of discrimination with the EEOC, alleging that IBM had terminated him and other older employees at IBM because of their age. Mr. Salonia's charge of discrimination was one of the charges that was consolidated for investigation and determination with more than 50 former IBM employees who filed related charges alleging that IBM discriminated against them because of their age when it laid them off in Resource Actions beginning in 2013.

38.    In April 2017, Gail Washbish filed a timely charge of age discrimination with the EEOC, after having been laid off in August 2016. *See Washbish v. IBM*, 3:21-cv-01521-AWT, 2023 WL 2433431, at *1 (D. Conn. Mar. 9, 2023). Ms. Washbish's charge of discrimination was one of the charges that was consolidated for investigation and determination with more than 50 former IBM employees who filed related charges alleging that IBM discriminated against them because of their age when it laid them off in Resource Actions beginning in 2013. *See supra* at [first paragraph in this section]; *compare* Exh. A to Am. Compl., *Washbish v. Int'l Bus. Machines Corp.*, No. 3:21-CV-1521 (AWT), 2023 WL 2433431 (D. Conn. Mar. 9, 2023), ECF No. 41-1 (Charge No. 520-2017-0087) (attached as Exh. C), *with* Exhibit A to Compl., *Estel v. IBM*, ECF No. 1 (listing same EEOC charge number). On July 19, 2021, the EEOC sent Ms. Washbish a letter stating that the agency found that Ms. Washbish had been discriminated against in violation of the ADEA. Exh. A to Am. Compl., *Washbish v. IBM*, ECF No. 41-1.

39.    On October 20, 2017, Jonathan Langley filed a timely charge of age discrimination, after having been laid off as part of a Resource Action on March 30, 2017. *See Langley v. IBM*,

No. 1:18-CV-00443-DAE (W.D. Tex. May 25, 2018), ECF No. 1 at 2, 24 (attached as Exh. D). Mr. Langley's claims of age discrimination stemming from IBM's corporate scheme to lay off thousands of its older employees is substantially similar to the allegations made in this Amended Complaint. *See id* at 2, 23.

40.     On May 9, 2018, Edvin Rusis filed a class-based charge of discrimination with the EEOC alleging that he and "thousands of other employees have been discriminated against by IBM on the basis of age." He later filed a putative collective action complaint in this judicial district on September 17, 2018, alleging that IBM discriminated against him and other older workers by laying them off disproportionality to younger workers and by failing to hire Mr. Rusis and other older workers for open positions for which they were qualified. *See* Compl. at 7, *Rusis v. IBM*, No. 1:18-cv-08434-VEC-SLC (S.D.N.Y. Sept. 17, 2018), ECF No. 1 (attached as Exh. E).

41.     On January 17, 2019, Robert Reineri filed a timely arbitration demand (in lieu of filing a charge with the EEOC and pursuant to the arbitration agreement he signed upon his layoff) alleging age discrimination against IBM, after being laid off by IBM as part of a resource action in July 2018. *See* Compl. at 2, *Reineri v.  Int'l Bus. Machines Corp.*, No. 1:21-cv-08654-LAK-BCM, 2022 WL 2316622 (S.D.N.Y. June 28, 2022), ECF No. 1 (attached as Exh. F). After a final hearing, the arbitrator entered a final award on October 20, 2021. *Id*. at 3.

42.     On June 6, 2019, Rosa Davidson was notified that she would be terminated as part of a Resource Action, and her employment ended on September 4, 2019. *See* Am. Compl., *Kinney v. Int'l Bus. Machines Corp.*, No. A:20-cv-00969-DAE, WL 2653895 (W.D. Tex. July 8, 2022), ECF No. 5 (attached as Exh. G). Ms. Davidson filed a timely charge of discrimination and then a lawsuit in federal court on September 18, 2020, alleging age discrimination in violation of the ADEA, along with 16 other plaintiffs who had also been laid off as part of Resource Actions and

filed timely charges of discrimination. *Id*. at 6-25; *see also* Compl., *Kinney v. IBM*, Sept. 18, 2020, ECF No. 1.

43.     The EEOC conducted a lengthy class-wide investigation of more than 50 charges that were consolidated from across the country. *See* Exhibit A. Its investigation spanned IBM's Resource Actions from 2013-2018. Based on its analysis of statistical data and "corroborating testimony from dozens of witnesses nationwide," it found "reasonable cause to believe that [IBM] has discriminated against" these older IBM workers because of their age. *Id*.

44.     The EEOC found that IBM's termination of employees like Plaintiffs was part of a systemic and long-term plan devised by top management to replace older workers with early career hires in group layoffs between 2013 and 2018.

45.     The EEOC's investigation showed that IBM's mass layoffs had an "adverse impact" on employees over 40, and it "uncovered top-down messaging from [IBM]'s highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires." *Id*.

46.     The EEOC issued a Notice of Right to Sue on August 27, 2021.

47.     Because the EEOC and IBM have been on notice since 2013 of allegations that IBM has an ongoing company-wide practice of terminating older workers through Resource Actions and replacing them with younger workers, and because the EEOC investigated whether IBM was engaged in a top-down pattern of discrimination in all its Resource Actions between 2013 and 2018, Plaintiffs are permitted to "piggyback" on their former co-workers' class-based charges. *See Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (1990) (holding that plaintiffs who did not file administrative claims of their own are able to piggyback on the claims of plaintiffs in another

action who did when there is "some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim").

48.     Upon information and belief, other similar lawsuits have been filed by former IBM employees who first filed EEOC charges alleging age discrimination based on Resource Actions or comparable group layoffs, and similar arbitration demands have also been confidentially filed. IBM is in possession of all relevant information regarding the dates upon which those EEOC charges, lawsuits, and arbitration demands were filed.

49.     Plaintiffs have therefore exhausted their administrative remedies under the ADEA.

## V.     ALLEGATIONS[1]

### A.     IBM Adopts a Companywide Bias against Older Workers.

50.     For years, as part of an effort to refocus its hiring and marketing strategies to appeal to a younger, "Millennial" customer base, IBM has engaged in a pattern and practice of systematically using companywide criteria and procedures designed to rid itself of older workers in large-scale layoffs to make room for younger workers. This policy was officially described as an effort to "correct [the] seniority mix" at the company in a presentation given to Diane Gherson, IBM's Senior Vice President of Human Resources, and James Kavanaugh, now IBM's Chief Financial Officer.

51.     This scheme was the culmination of years of review and discussion within the company that stereotyped older workers as rigid and unreceptive to new technology while praising "Millennial" employees as innovative.

---

[1] Additional factual allegations regarding IBM's discriminatory corporate scheme, which affected the Plaintiffs here, was set forth in the Amended Complaint in *Kinney v. IBM*, Oct. 7, 2020, ECF No. 5 at 26-33. Plaintiffs incorporate by reference those factual allegations.

52.    For example, in 2006, IBM's internal analysis of its employee demographics by one of the company's consulting departments described older workers as "gray hairs" and "old heads." This analysis concluded that younger workers "are generally much more innovative and receptive to technology than baby boomers," and that therefore transforming the company's "organizational technology" to focus on younger workers "can yield substantial and permanent incremental capabilities and increases in productivity."[2]

53.    In later years, IBM amplified its policy of preferring younger workers, to the detriment of its older employees. In 2014, new IBM Chief Executive Officer Virginia "Ginni" Rometty conducted a major overhaul of the company to focus more on "CAMS," an acronym for Cloud-Analytics-Mobile-Security & Social Media. A presentation, titled "CAMS are Driven By Millennial Traits," was made at a 2014 IBM event in New York.

54.    The slides in that presentation claimed that Millennials typically exhibit desirable work attributes, like placing trust in data and reaching decisions through collaboration and consensus, while individuals over 50 typically exhibit undesirable work attributes, like being "more dubious" of analytics, placing "less stock in data," and being less "motivated to consult their colleagues to get buy in." The IBM slides concluded that "It's Baby Boomers who are the outliers."[3]

---

[2] *See* IBM, *The Maturing Workforce: Innovation in Workforce Enablement* (2006), https://assets.documentcloud.org/documents/4414883/Maturing-Workforce-feus01291-1.pdf.

[3] Peter Gosselin & Ariana Tobin, *Cutting 'Old Heads' at IBM*, ProPublica (Mar. 22, 2018), https://features.propublica.org/ibm/ibm-age-discrimination-american-workers/ ; *see also* Christian Sarkar, *"Marketing and the Millennial Mindset"- An Interview with IBM's Samantha Klein*, The Marketing Journal (June 3, 2016), http://www.marketingjournal.org/marketing-and-the-millennial-mindset-an-interview-with-ibms-samantha-klein/ ("The secret to capturing the hearts, minds, and most importantly, wallets of the millennial generation is likely working with you. Your millennial employees are your most valuable and accessible asset when it comes to successfully marketing your business to the millennial generation.").

55.    During that same event, titled "Reinvention in the Age of the Millennial," IBM personnel discussed ways the company could "better embrace the Millennial Mindset."[4] At around the same time, IBM launched a company-sponsored blog called "The Millennial Experience" and a social media campaign using the Twitter hashtag, #IBMillennial. It also created "Millennial Corps," a network of young employees who would be consulted by IBM senior leadership about business decisions.

56.    In 2015 and 2016, IBM doubled down on its efforts to replace its long-tenured, older employees with the younger Millennials it sought to recruit. IBM made presentations to senior IBM executives calling for them to evaluate long-term employees more harshly, to use those negative evaluations to justify selecting long-term employees for group terminations, and to replace more experienced employees with "EPs"—IBM management short-hand for "early professionals."[5]

57.    As one news article touting IBM's Millennial-focused approach explained, "[t]he idea" behind IBM "pushing for 'early professional hiring' (EPH)" was "to bring in as much young talent into the workforce with every given opportunity." A Vice President at IBM defined "early professionals" as engineers with "two or three years' experience" or consultants with "one or two years' experience," who would then be "fast forwarded" to high-level positions.[6]

58.    Presentations prepared in 2015 and 2016 for IBM executives included plans for IBM to adopt an "aggressive performance management posture" and double the share of employees

---

[4] *See, e.g.*, Krista Sande-Kerback, *"Reinvention in the Age of the Millennial,"* IBM Ctr. for Applied Insights (Dec. 16, 2014), https://ibmcai.wordpress.com/tag/reinvention-in-the-age-of-the-millennial/.

[5] *See* Gosselin & Tobin, *supra* note 2.

[6] Shivani Shinde Nadhe, *IBM's new team to focus on millennials,* Bus. Standard (May 30, 2016, 3:17 PM), https://www.business-standard.com/article/companies/ibm-s-new-team-to-focus-on-millennials-116053000677_1.html.

given negative evaluations, to use those negative evaluations to select 3,000 employees for group terminations, and to replace the majority of those laid off with "early professionals."

59.    Likewise, another presentation included plans for "an influx of EPs" to "correct" the company's "seniority mix." This presentation also called for a more "aggressive performance management approach" to facilitate a reduction of 2,500 employees. IBM's Human Resources Vice President Diane Gherson and IBM's current Chief Financial Officer James Kavanaugh attended the presentation.

60.    A 2016 presentation prepared for IBM executives specifically called for managers to exempt all "early professional hires" from layoffs, regardless of performance. Long-term and generally much older employees were provided no such exemption.

61.    Based on these presentations and other evidence, the EEOC has found that there was "top-down messaging from [IBM]'s highest ranks directing managers to engage in an aggressive approach to significantly reduce the headcount of older workers to make room for Early Professional Hires."

   **B.    IBM Targets Older Workers for Termination in "Resource Actions."**

62.    In the past six years alone, IBM has eliminated tens of thousands of American employees ages 40 and over.

63.    IBM targeted older workers for group layoffs while favoring disproportionately younger groups of workers, such as "early professionals" and recent college graduates, by classifying them as exempt (or protecting them in whole or in part) from termination through Resource Actions.

64.    Thus, IBM skewed the pool of employees vulnerable to termination in Resource Actions heavily toward employees with long careers and a long tenure at the company, who were

typically at least 40 years old and who were disproportionally older than the average employee. Indeed, the EEOC's statistical analysis of data from 2013 to 2018 found that "it was primarily older workers (85.85%) in the total potential pool of those considered for layoff." *See* Exhibit A.

65.    In the run-up to Resource Actions, IBM's policy and practice was to direct its first-line managers to engage in more "aggressive performance management" of older employees by issuing them lower annual performance evaluations. Under IBM's performance evaluation system, workers receive a score of 1, 2+, 2, 3, or 4 from their first-line manager, with 1 being the highest score and 4 being the lowest. A score of 2 was considered a solid score (and a "2+" a great score), while a 3 meant that the employee's performance needed improvement.

66.    IBM directed first-line managers to reduce the number of 1s and 2+s given to employees and to rate the performance of more employees with scores of 3 and 4. As part of its companywide discriminatory policies and practices, IBM then relied on these lower scores and alleged performance deficiencies as pretext for selecting older workers for layoffs.

67.    IBM created a centralized system for ensuring that Resource Actions disproportionally removed its older workers. For each Resource Action, first-line managers were notified of the percentage of employees in their division who had to be terminated and were asked to recommend candidates for removal, based in part on the low performance evaluations the first-line manager had already given at the direction of higher-level executives.

68.    The first-line managers' recommendations for layoffs were ultimately reviewed and approved or denied by a central decision-making unit made up of IBM's Human Resources and Legal departments. This central decision-making unit regularly considered employees' ages and proximity to retirement eligibility in making final Resource Action decisions.

69.     IBM used its discriminatory policies and practices to engineer its Resource Actions and terminations to get rid of older workers to make room for much younger workers. It has achieved its company-wide goal of correcting the "seniority mix" of its workforce to produce a much younger one.

70.     IBM's layoffs since 2014 have disproportionately eliminated workers who were age 40 and older and increased the percentage of the younger Millennial workers that it coveted.

71.     A federal court has ruled that "internal IBM corporate planning documents" provide a reasonable basis to find that "IBM executives sought to lay off older workers in an effort to hire a younger workforce." Order Adopting R. & R. of the U.S. Magistrate Judge, Den. IBM's Mot. for Summ. J., *Langley v. IBM.*, No. 1:18-CV-00443-DAE (W.D. Tex. Feb. 28, 2020), ECF No. 216 at 11 (attached as Exh. H) (denying summary judgment to IBM on age discrimination claims by employee who was terminated from IBM at age 59 in a 2017 Resource Action).

72.     The *Langley* court ordered IBM to produce high-level planning documents and communications from its most senior executives including Chief Executive Officer Ginni Rometty, Chief Financial Officer James Kavanaugh, Chief Human Resources Officer Diane Gherson. In its Order, the Court rejected IBM's "argument that discovery should be cabined based on an arbitrary boundary," finding that its resistance to company-wide discovery was "highly suspect." Pls.' Opposed Contingent Mot. for Leave, *Langley*, Jan. 31, 2020, ECF No. 211 at 11 (attached as Exh. I).

73.     The *Langley* court specifically found that the "abundant public and internal statements of IBM's CEO and CFO in promoting the company's need to 'refresh' its workforce" provide a reasonable basis to believe that lower-level managers "were following company

directives when directing their own subordinates where to cut costs in the [Resource Action]." ECF No. 216 at 12 (attached as Exh. H).

74.    Likewise, the court concluded that internal IBM documents "suggest that high level IBM executives were encouraging managers to lay off workers like [the plaintiff] to make room for younger employees." R. & R. of U.S. Magistrate Judge, *Langley*, December 23, 2019, ECF No. 201 at 8 (attached as Exh. J).

75.    Some of the evidence relied on by the *Langley* court included documents describing corporate objectives as "[i]ncreas[ing] early professional hiring"; comparing year over year hiring of "early professionals" in a department and suggesting how to increase the percentage of early professional hires; and setting a policy excluding early professional hires from Resource Actions.

76.    The *Langley* court held that the IBM documents provided a reasonable basis for a jury to find that IBM's alleged decision-maker "was in fact effectively told whom to lay off." Further, the court found that managers were required to meet "headcount" quotas that favored hiring younger workers and disfavored retaining or rehiring older workers.

77.    More recently another court within this District scrutinized documents IBM had withheld from discovery and determined that they were "directly relevant" to nearly identical ADEA claims made here. *See Lohnn v. IBM*, 2022 WL 36420 (S.D.N.Y. Jan. 4, 2022), at *12. That court concluded that those documents "on their face appear to show an effort to remove older employees in favor of younger employees." *Id*. at *6.

78.    Plaintiffs and claimants in other similar court cases and arbitrations against IBM have uncovered incriminating evidence of age discrimination at IBM in the form of executive emails, including the following:

79.     IBM executives exchanged emails making clear IBM wanted to see the percentage of "millennials" employed at IBM increased. Pls.' Reply in Supp. of Mot. to Vacate & Opp., *Laudig V. IBM*, No. 1:21-cv-05033-AT (S.D.N.Y Apr. 1, 2022), ECF No. 22 at 10 (attached as Exh. K).

80.     In one email chain, an IBM executive expresses frustration that IBM's proportion of millennials employees is much lower than at a competitor firm. She forwards an article to another executive, which she points out "says 72% of ACN ee's are millenials [sic]." The recipient of the email responds, stating "Last year, millennials made up 42% of our workforce and 81% of new hires . . . . we can refresh the numbers for YTD 2016-and see what makes sense to use in future opps." The IBM executive replies: "42 is a far cry from 72." *Id*.

81.     These emails show an IBM executive making clear concerns to her Human Resources team, noting to her team: "at the last OT we discussed the fact that our millennial population trails competitors. The data below is very sensitive – not to be shared – but wanted to make sure you have it. You will see that while Accenture is 72% millennial we are at 42% with a wide range and many units falling well below that average. Speaks to the need to hire early professionals – and to avoid using downbanding of existing employees as a way to fill jobs. Honestly I think we should stop this practice – it means overpaying, creates blockers and inhibits bringing in new thinking from the outside." *Id*.

82.     Indeed, the withheld emails show that IBM was particularly focused on an analysis of the percentage of millennials in each business unit at IBM. *Id*.

83.     An IBM analysis reflected in these emails includes a chart which shows the percentage of employees in various generational cohorts in each business unit. These cohorts

identify the proportion of employees who are "millennial", "Gen X", "baby boomers", and "traditionalists". *Id*. at 11.

84.    In another communication, an IBM executive applauds the use of the disparaging term "Dinobabies" to describe the older IBM employees and a plan to oust them from IBM's workforce; the executive describes his plan to "accelerate change by inviting the dinobabies" (new species) to leave" and make them an "Extinct species." *Id*.

85.    In another email, an IBM executive describes IBM's "*dated* maternal *workforce – this is what must change*. They really don't understand social or engagement. Not digital natives. *A real threat for us*." *Id*. (emphasis added).

86.    In one email, an IBM executive warns her team: "I'm sure you all know this but as a reminder, keep data on age very limited and when in doubt check with legal." *Id*.

87.    These emails evidence a top-down plan to retain younger workers in an effort to improve IBM's demographic makeup. In one email, an IBM executive explains a "mandatory" rule that "no EPH [Early Professional Hire] is eligible for RA ["resource action" – IBM's term for mass layoff] in first 12 months of hire. We are not making the progress we need to make demographically, and we are squandering our investment in talent acquisition and training." *Id*.

88.    In another email, an IBM executive explains that the percentage of millennials at IBM will increase once certain of IBM's "resource action" (layoff) programs are complete: " – more on this issue of % millennials. The math will improve when [laid off] employees move on, and when we bring onboard our early professionals and interns in the summer . . .." *Id*.

## VI.   CAUSES OF ACTION

### A.      CLAIM FOR RELIEF

**Age Discrimination in Employment Act, 29 U.S.C. Sections**

**621-634 (On Behalf of All Plaintiffs Against Defendant)**

89.    Plaintiffs incorporate by reference all allegations in this Complaint.

90.    IBM terminated Plaintiffs because of their age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1).

91.    IBM's violation of the ADEA was knowing and willful.

92.    As the direct and proximate result of IBM's age discrimination, Plaintiffs have lost their jobs and sustained and will continue to sustain wage and benefit losses, and have incurred and will continue to incur out-of-pocket pecuniary losses, including items such as replacement costs for medical insurance.

93.    As the direct result of Defendant's pretextual reasons proffered for termination, plaintiffs have lost earnings capacity.

## VII.      PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that the Court enter judgment and grant the following relief against Defendant as follows:

(a)    IBM be ordered to pay each Plaintiff his or her back pay and benefits with interest;

(b)    Final judgment in favor of each Plaintiff against IBM be entered for liquidated damages in an amount equal to the amount of back pay and benefits due to that Plaintiff;

(c)    IBM be ordered to reinstate Plaintiffs to their respective former positions with all lost pay and benefits, seniority, and promotions;

(d)    In the alternative, IBM be required to pay Plaintiffs front pay and

benefits if reinstatement is not feasible;

(e)     That Plaintiffs be awarded compensation for the adverse tax consequences of their recovery of wages and benefits in a lump sum;

(f)     That Plaintiffs be awarded the costs and expenses of this litigation and their reasonable attorney's fees;

(h) That Plaintiff be awarded pre- and post-trial interest;

(i) That IBM be enjoined from discriminating against employees in any manner similar to the violations of the ADEA alleged here;

(j) That Plaintiffs be granted such further legal and equitable relief as the Court may deem just and proper.

Date:  September 8, 2023                    Respectfully submitted,

_/s/ Ashleigh A. Musser_
Steven M. Tindall
Dylan S. Hughes
Ashleigh A. Musser
Gibbs Law Group LLP
1111 Broadway, Suite 2100
Oakland, CA 94607
Tel: (510) 350-9700
E-mail: smt@classlawgroup.com
E-mail: dsh@classlawgroup.com
E-mail: aam@classlawgroup.com

Michael Eisenkraft
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Email: meisenkraft@cohenmilstein.com

Joseph M. Sellers
Brian Corman
Cohen Milstein Sellers & Toll P.L.L.C.
1100 New York Avenue, N.W. Suite 500

Washington, D.C. 20005
Tel: (202) 408-4600
Email: jsellers@cohenmilstein.com
Email: bcorman@cohenmilstein.com

David G. Webbert
Carol J. Garvan
Shelby H. Leighton
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332
Tel: (207) 623-5110
Email: jyoung@work.law
Email: dwebbert@work.law
Email: cgarvan@work.law
Email: sleighton@work.law

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2023, the foregoing document was filed electronically on the Court's ECF electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF system.

*/s/ Ashleigh A. Musser*
Ashleigh A. Musser