```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
R. KEVIN RODRIGUEZ, JONATHAN            :
ROSENOER, BILL ELLMORE, MICHAEL         :
BUTERA, ALANNA ROBINSON-BAILEY,         :
KEVIN MONAGLE, DARIN CROSS,             :
DARRELL GOFF, DEBORAH YOUNG,            :
VIDYA SAGAR, CATHY CARNEY,              :
PATRICK O'BOYLE III, KAM REZVANI,       :      OPINION AND ORDER
RON HOWELL, JASON PROCTOR, and          :
JONATHAN URBAN,                         :      21 CV 9928 (VB)
                     Plaintiffs,        :
v.                                      :
                                        :
INTERNATIONAL BUSINESS MACHINES         :
CORPORATION,                            :
                     Defendant.         :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiffs R. Kevin Rodriguez, Jonathan Rosenoer, Bill Ellmore, Michael Butera, Alanna Robinson-Bailey, Kevin Monagle, Darin Cross, Darrell Goff, Deborah Young, Vidya Sagar, Cathy Carney, Patrick O'Boyle III, Kam Rezvani, Ron Howell, Jason Proctor, and Jonathan Urban, bring this action against their former employer, defendant International Business Machines Corporation ("IBM"), for violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34.

Now pending is defendant's motion to dismiss the second amended complaint pursuant to Rule 12(b)(6). (Doc. #68).

For the following reasons, the motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the second amended complaint and exhibits attached thereto, and draws all reasonable inferences in plaintiffs' favor, as summarized below.

On November 24, 2021, forty-two plaintiffs filed this action against IBM for allegedly terminating their employment because of their age, in violation of the ADEA. After over a year of discussions between the parties, twenty-six plaintiffs voluntarily dismissed their claims. The sixteen remaining plaintiffs filed the second amended complaint on September 8, 2023.

Plaintiffs allege IBM systematically terminated and replaced "older employees with much younger workers" as part of "an effort to rebrand its image and shift its recruiting focus to 'Millennials.'" (Doc. #67 (Second Amended Complaint ("SAC")) ¶ 4). Plaintiffs assert "IBM carried out a company-wide scheme of discharging its older workers through group terminations, known at IBM as 'Resource Actions.'" (Id.).

Over the course of several years, the U.S. Equal Employment Opportunity Commission ("EEOC") investigated the complaints of older IBM employees who were terminated and found "'reasonable cause to believe that [IBM] has discriminated against' these older IBM workers because of their age." (SAC ¶ 1 (quoting Doc. #67-1)). Plaintiffs allege "[t]he EEOC further found that termination of employees like Plaintiffs through group layoffs between 2013 and 2018 was part of a systemic and long-term plan devised by top management to replace older workers with younger career hires." (Id. ¶ 2).

As pertinent to the present motion, plaintiffs include a section in their second amended complaint entitled "Exhaustion of Administrative Remedies." (SAC ¶¶ 29–49). Plaintiffs do not allege that any of them filed a charge of discrimination with the EEOC. Instead, plaintiffs allege

they have exhausted their administrative remedies under the ADEA because they may "piggyback" on the timely filed EEOC charges and civil actions of their former co-workers. Specifically, plaintiffs allege Margaret Ahlders filed her charge of discrimination with the EEOC on May 6, 2016, and filed an amended charge on December 16, 2016.[1]  (SAC ¶¶ 32–33).

In September 2020, after conducting an investigation, the EEOC issued a determination letter for fifty-eight charging parties, including Ms. Ahlders, finding reasonable cause to believe IBM violated the ADEA by discriminating against the charging parties because of their age. Based on this determination, the EEOC issued Ms. Ahlders a notice of right to sue on August 26, 2021.  The notice of right to sue stated Ms. Ahlders had ninety days, or until November 24, 2021, to perfect her EEOC charge by filing a lawsuit against IBM in federal or state court.  (Doc. #70-13 at ECF 2, 3).[2]  On November 23, 2021, Ms. Ahlders filed an individual arbitration demand pursuant to the terms of her separation agreement with IBM.  (Doc. #74-1).  Plaintiffs filed this action the next day, November 24, 2021.

## DISCUSSION

I.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

---

[1]   Although plaintiffs include allegations regarding several other EEOC charge-filers in the second amended complaint, the parties' briefing focuses only on Ms. Ahlders's charge.  (See Doc. #74 ("Pls. Opp.") at 6).  As such, the Court will do the same.

[2]   The Court may take judicial notice of documents filed with or issued by the EEOC as public records, even if they are neither incorporated by reference into or attached to the second amended complaint.  See Rusis v. Int'l Bus. Machs. Corp., 529 F. Supp. 3d 178, 201 (S.D.N.Y. 2021) (collecting cases).

"ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Iqbal, 556 U.S. 662, 679 (2009).³  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."  Id.

---

³ Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

II.   Administrative Exhaustion

Defendant argues the second amended complaint must be dismissed because plaintiffs failed to exhaust their administrative remedies.

The Court disagrees.

A.   Legal Standard

A civil action under the ADEA may not be commenced until sixty days after a charge alleging unlawful discrimination has been filed with the EEOC.  29 U.S.C. § 626(d)(1).  A charge must be filed within 180 days after the alleged unlawful discrimination occurred or 300 days after the alleged unlawful discrimination occurred in so-called "deferral states," which have a state statute prohibiting age discrimination, such as New York.  Id.  The purpose of the EEOC charge requirement is to give the EEOC an opportunity to "seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion."  Id. § 626(d)(2).  The ADEA charge-filing requirement "sets a time limit, not for the purpose of limiting time for suit, but for the purpose of affording a prompt opportunity to attempt conciliation."  Tolliver v. Xerox Corp., 918 F.2d 1052, 1059 (2d Cir. 1990).

If the EEOC finds reasonable cause to believe an employer has violated the ADEA but the commission has neither "entered into a conciliation agreement" nor filed a civil action against the employer, it issues to the charge-filer a "notice of right to sue."  42 U.S.C. § 2000e-5(f)(1).  Once a charge-filer receives a notice of right to sue, she has ninety days to file an action based on the allegations in the charge.  29 U.S.C. § 626(e).

Courts have created an exception to the ADEA's charge-filing requirement.  See In re IBM Arb. Agreement Litig., 76 F.4th 74, 82 (2d Cir. 2023).  The "single filing rule" or so-called "piggybacking doctrine," allows plaintiffs to satisfy the ADEA's administrative exhaustion

5

requirement by relying on the timely-filed administrative charge of another individual. See Tolliver v. Xerox Corp., 918 F.2d at 1056–57. However, "an individual who has failed to file her own timely administrative charge" may only piggyback on another's charge if the charge-filer "subsequently commenced suit in reliance on that charge." Rusis v. Int'l Bus. Machs. Corp., 529 F. Supp. 3d at 210. Moreover, "a plaintiff seeking to piggyback onto the administrative charge of another would be subject to the same statute of limitations as those persons similarly situated upon whose charge he relies." Bowers v. Xerox Corp., 1995 WL 880773, at *4 (W.D.N.Y. May 5, 1995). That is, a plaintiff who invokes the piggybacking doctrine must file an action within ninety days after the charge-filer's receipt of a notice of right to sue. Id. at *4–5.

In determining whether a plaintiff can piggyback on another individual's charge, the overarching inquiry "is whether the timely filed claims provided an adequate opportunity to satisfy the statutory tasks imposed upon the EEOC." Tolliver v. Xerox Corp., 918 F.2d at 1059. Indeed, "[t]he purpose of the charge filing requirement is fully served by an administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance elect to join a preexisting suit or initiate their own." Id. at 1057.

B.     Analysis

Here, plaintiffs plausibly allege they exhausted their administrative remedies by piggybacking on Ms. Ahlders's charge. Plaintiffs allege Ms. Ahlders filed a charge with the EEOC stating IBM engaged in a "nationwide pattern or practice of discrimination . . . against older employees." (SAC ¶ 33). Ms. Ahlders received her notice of right to sue from the EEOC on August 26, 2021, and perfected that notice within the required ninety days of receipt by filing an arbitration demand on November 23, 2021. Plaintiffs timely filed this action on November

24, 2021, which was also within ninety days of Ms. Ahlders's receipt of her notice of right to sue.  Thus, plaintiffs satisfy the requirements for piggybacking in this circuit.

Defendant nonetheless contends plaintiffs' claim should be dismissed because the piggybacking doctrine does not extend to the facts of this case and, in any event, plaintiffs' claims are untimely.  The Court addresses each argument in turn.

        1.      <u>Scope of Piggybacking Doctrine</u>

Defendant asserts the scope of the ADEA piggybacking doctrine is limited only to situations in which (i) a non-charge filer seeks to join the action of a valid charge-filer or (ii) a non-charge filer seeks to file an individual action following the decertification of an action to which the non-filer was a plaintiff or class member.  (Doc. #69 at 7).  In other words, defendant contends a non-charge filer may piggyback only if she joins, or has previously joined, an existing action.  The Court does not find the doctrine to be so limited.

The Second Circuit has explicitly stated there is "no reason to require ADEA plaintiffs seeking to benefit from the single filing rule to join preexisting individual suits."  <u>Tolliver v. Xerox Corp.</u>, 918 F.2d at 1057.  Although the parties in <u>Tolliver</u> had focused on whether the decertification of the charge-filers' class precluded piggybacking, the court explained that the primary issue was "whether the appellants may benefit from the notice . . . <u>irrespective</u> of the class action."  <u>Id</u>. at 1057–58 (emphasis added).  The court answered that question in the affirmative.

Defendant's argument that allowing piggybacking in this case would be an undue "expansion" of the doctrine is similarly unavailing.  (Doc. #69 at 9).  In <u>Rusis v. International Business Machines Corporation</u>, 529 F. Supp. 3d at 210, the district court expressed a concern about future plaintiffs relying on "the existence of an EEOC charge, floating somewhere in the

7

ether." But that concern is not pertinent here. Plaintiffs do not allege—as the Rusis court feared—"that there must surely be a timely EEOC charge out there somewhere onto which [they] can piggyback." Id. Here, plaintiffs have tied their claims to a specific EEOC charge, notice of right to sue, and an arbitration demand timely filed in reliance on the charge—that of Ms. Ahlders.

Defendant makes much of the language in Rusis concerning "an implicit requirement that there be some existing action which an individual may, although need not, join." Rusis v. Int'l Bus. Machs. Corp., 529 F. Supp. 3d at 210. First, Rusis is not binding on this Court. But more importantly, defendant's reading of Rusis depends on taking that court's language out of context. Defendant is correct that Ms. Ahlders's severance agreement contained an enforceable collective action waiver, see Estle v. Int'l Bus. Machs. Corp., 23 F.4th 210, 213–14 (2d Cir. 2022), and therefore plaintiffs here cannot in fact join any action she files. However, the animating concern of the Rusis court was the possibility that an individual be allowed to piggyback on charge-filers who never pursue their own litigation and instead opt in to a collective, which could "create a piggybacking chain of near-infinite length and scope by seeking out new opt-ins who have filed more recent or broader EEOC charges who can then save others in the action who would otherwise be unable to piggyback onto the charges of the named plaintiffs." Id. at 211. That concern is not implicated here, because plaintiffs seek to piggyback on Ms. Ahlders, who has pursued her own action based on her own charge.

In addition, on the particular facts of this case, the purpose of the administrative exhaustion requirement is well-served by permitting plaintiffs to piggyback on Ms. Ahlders's charge. As both Congress and the Second Circuit have observed, the purpose of the administrative exhaustion requirement is to provide the EEOC and the defendant with notice and

8

an opportunity for "informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d)(2); Tolliver v. Xerox Corp., 918 F.2d at 1058–59.  Ms. Ahlders's charge, and the charges of the fifty-seven other filers listed in the EEOC's September 2020 determination letter (Doc. #67-1), achieved that purpose.  See Tolliver v. Xerox Corp., 918 F.2d at 1058 ("Once the attention of the EEOC and Xerox had been drawn to the claim of the Lusardi plaintiffs that age discrimination had occurred throughout the company in implementing the reduction in force, there is no reason to think that conciliation would have been more likely if these 18 appellants had filed individual claims.").  Indeed, if the Court were to adopt defendant's limitation on the piggybacking doctrine, it would only encourage aggrieved individuals to file separate charges even when the EEOC has had a full opportunity to investigate and attempt to resolve their claims.  The Court declines to encourage a "wasteful and nonsensical" exercise, which would "flood the EEOC with repetitive notices," and would serve "no conciliatory purpose."  See id. at 1058–59.

Given the facts of this case, defendant should not be able to use the ADEA's administrative exhaustion requirement as a shield against plaintiffs' allegations of age discrimination, which have been reported to and investigated by the EEOC and of which defendant is well aware.  (Doc. #67-1 at ECF 3).

2. Timeliness

Defendant argues even if plaintiffs could properly invoke the piggybacking doctrine here, their claims are untimely because Ms. Ahlders did not timely perfect her notice of right to sue by filing a civil action in federal or state court based on the underlying conduct in her charge.  Instead, Ms. Ahlders filed an arbitration demand within the prescribed ninety days of receipt of her notice of right to sue.  In support of its position, defendant argues that because the Second

Circuit has held arbitration claimants cannot piggyback on civil litigants, "it readily follows that court litigants cannot piggyback on arbitration claimants." (Doc. #77 at 3 (citing In re IBM Arb. Agreement Litig., 76 F.4th at 83–84)).

Not so. The Second Circuit found that because the administrative exhaustion requirement is not a prerequisite to filing an arbitration demand, the piggybacking doctrine does not apply in the arbitration context. In re IBM Arb. Agreement Litig., 76 F.4th at 83 ("All that the piggybacking rule does is functionally waive the administrative-exhaustion requirement."). But the fact that the piggybacking doctrine does not apply to arbitration proceedings does not mean that filing a demand in arbitration does not suffice to show Ms. Ahlders pursued her claim of alleged discriminatory conduct underlying her EEOC charge. It matters not for the purposes of administrative exhaustion that she filed an arbitration demand as opposed to a civil complaint—what matters is she commenced an action "in reliance on [her] charge." See Rusis v. Int'l Bus. Machs. Corp., 529 F. Supp. 3d at 210; see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). While neither the charge-filing process nor the piggybacking doctrine apply to arbitration, it does not follow that civil litigants—to which the piggybacking doctrine indisputably applies—cannot piggyback on a timely filed action in an arbitral forum that challenges the conduct described in a timely filed EEOC charge.

Lastly, defendant argues Ms. Ahlders's arbitration demand was untimely under the terms of her severance agreement and therefore cannot serve as a basis on which plaintiffs may piggyback their claims. Citing only non-binding, out-of-circuit case law, defendant contends it is "a black letter principle" that an individual may only piggyback on an EEOC charge that resulted

in a timely filed lawsuit. (Doc. #77 at 5). But defendant conflates, on the one hand, the statutory requirements to timely perfect a notice of right to sue by filing an action within the prescribed ninety days of receipt and the 300-day statute of limitations for filing an administrative charge, with, on the other hand, the 300-day arbitration demand deadline. Both of the <u>statutory</u> requirements for timely exhausting Ms. Ahlders's administrative remedies were met here. The <u>contractual</u> 300-day filing deadline contained in Ms. Ahlders's arbitration agreement is separate and apart from the statutory requirements at issue. Defendant's attempt to attack the merits of Ms. Ahlders's claim in arbitration is inappropriate in the administrative exhaustion context.

Accordingly, plaintiffs' ADEA claim may proceed.

## CONCLUSION

The motion to dismiss is DENIED.

By April 10, 2024, defendant shall file an answer to the second amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion. (Doc. #68)

Dated: March 27, 2024
  White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge